ANGELA H. ELMORE (SBN 13693)
UTAH LEGAL CLINIC
214 East Fifth South Street
Salt Lake City, Utah
Telephone: (801) 328-9531
angela@utahlegalclinic.com

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| **COREY JOHNSON on behalf of minor child, S.J.**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**CACHE COUNTY SCHOOL DISTRICT, TERI CUTLER,** Mountain Crest High School Principal, **DENISE MOURITSEN,** Mountain Crest High School Assistant Principal**, DOUG SNOW,** Mountain Crest High School Assistant Principal, **LORI REYNOLDS,** Mountain Crest High School Cheerleading Advisor, **KIRK MCRAE,** Title IX Compliance Coordinator, **MIKE LIECHTY** Cache County School District Deputy Superintendent, **STEVEN C. NORTON,** Cache County School District Superintendent, **JOHN DOES I-XX,** Mountain Crest High School Faculty,<br><br>Defendants. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (VIOLATION OF CIVIL RIGHTS)**<br><br>**DEMAND FOR TRIAL BY JURY**<br><br>Case No.: _____<br><br>Judge: _____ |

PLAINTIFF, COREY JOHNSON on behalf of minor child, S.J., by and through counsel, ANGELA ELMORE of the Utah Legal Clinic, as a cooperating attorney for the Utah Civil Rights & Liberties Foundation, Inc., a Complaint and causes of action against the above-stated Defendants.

## **PRELIMINARY STATEMENT**

1. This 42 U.S.C. § 1983 action seeks equitable and legal relief for the violation of the constitutional rights of the Plaintiff.

2. S.J. is being unconstitutionally punished for exercising her First Amendment rights outside of school property and is seeking general damages and attorney's fees.

3. Defendant's punishment of S.J. also violates her Fourteenth Amendment rights under the promise of equal protection, as male athletes in similar situations received significantly lighter punishments for similar violations of the same social media district policy.

4. Defendants' punishment of S.J. violates Title IX, as male athletes in similar situations received significantly lighter punishments.

5. S.J. wishes to be reinstated to the Mountain Crest High School Cheerleading Squad unconditionally and without punishment, in addition to being allowed to participate in any camps, trainings, and any and all other related activities. S.J. is also seeking an order that policies affecting off campus speech be changed or removed to comply with the student's First Amendment Rights.

**JURISDICTION AND VENUE**

6. Jurisdiction is proper in this Court under 42 U.S.C. § 1983 and § 1988, as well as 28 U.S.C. § 1343, and arises in order to enforce provisions of the United States Constitution.

7. Declaratory relief is authorized by 28 U.S.C. (§ 2201) and § 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

9. Pursuant to 28 U.S.C. § 1391 (e), venue is proper in this court because the misconduct of Defendants occurred within and will occur within the Northern Division of the United States District Court for the District of Utah and all individual Defendants reside within the Northern Division of the United States District Court for the District of Utah.

**PARTIES**

10. Plaintiff **COREY JOHNSON, on behalf of minor child S.J.,** is a resident of Cache County. S.J. resides within the Northern Division of this Court. She is currently a student at Mountain Crest High School and is seeking to be reinstated on the school's cheerleading squad unconditionally and without punishment, and to amend or remove any and all school policies that infringe on

student's off campus First Amendment and Fourteenth Amendment rights. She is also seeking changes to any policies or practices that result in lighter punishment for male athletes, violating both Title IX and the Fourteenth Amendment.

11. Defendant **CACHE COUNTY SCHOOL DISTRICT** is a public school district located in Cache County, State of Utah. Their administrative offices are located at 2063 N. 1200 E., North Logan, UT 84341. They are authorized by Utah Law to operate and control, *inter alia,* Mountain Crest High School.

12. Defendant **TERI CUTLER** is the Principal of Mountain Crest High, and is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times is a person relevant to this Complaint.

13. Defendant **DENISE MOURITSEN** is an Assistant Principal of Mountain Crest High School, and is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times is a person relevant to this Complaint.

14. Defendant **DOUG SNOW** is an Assistant Principal at Mountain Crest High School, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

15. Defendant **LORI REYNOLDS**, is the Cheerleading Advisor at Mountain Crest High School, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

16. Defendant **KIRK MCRAE** is the Cache County School District Human Resources Director and Title IX Compliance Coordinator, and is a person within the

meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

17.  Defendant **MIKE LIECHTY** is the Cache County School District Deputy Superintendent, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

18.  Defendant **STEVEN C. NORTON** is the Cache County School District Superintendent, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

19.  Defendants **JOHN DOE I-XX**, are as yet unidentified members that are employed by the Mountain Crest High School. They were, at all times pertinent to this action involved with enforcement of the Resolution and Policy. Defendants DOES I-XX are sued individually and in their official capacity. The full, true and correct names of these defendants are unknown to Plaintiff at this time. When Plaintiff discovers the full, true and correct names of these defendants, she shall seek leave to amend this Complaint.

20.  At all times pertinent to this action, the individual Defendants were each acting under color of state law, with powers vested in them by the State of Utah.

## FACTS

21.  On Thursday, March 15, 2018, around 8:00 PM, five female students from Mountain Crest High School, including the Plaintiff, were driving in a private vehicle

on public roads, all activities of which were not related to the school or school activities.

22. The driver and all passengers were not in violation of any traffic laws.

23. The five girls were notified that same day that they had all been selected for the 2018-2019 school year cheerleading team.

24. The five girls were celebrating their admission to the cheer team.

25. While in the car, one girl connected her phone to the car stereo and shuffled to a random song. A popular song titled "I.D.F.W.U." by artist Big Sean began playing and the five girls began to sing along.

26. S.J. then took out her cell phone and took an eight-second video of her and her friends singing the following lyrics from the song: "I don't fuck with you, you little stupid ass bitch, I ain't fucking with you."

27. The lyrics were not directed at any particular person, school student, or administrator.

28. S.J. intended to just save the video to her phone, but accidentally hit a button next to the save button and added the video to her private SnapChat story.

29. By adding this video to her private story, S.J. and approximately 30 of her contacts were able to watch the video.

30. S.J. realized her mistake approximately thirty minutes later and deleted the video from her private SnapChat story.

31. That following Monday, March 19, 2018, the five girls in the video and their parents were notified to meet with the Principal, Teri Cutler; Assistant Principals, Denise Mouritsen and Doug Snow; and the Cheer Coach, Lori Reynolds. At this time, the administrators had presented the lyrics sung by the five girls in the video to the parents in writing.

32. The administrators stated that the lyrics contained profanity, requiring the five girls to be dismissed from the cheer team for "improper social media usage" under the Cheer and Stunt Team Constitution.

33. Specifically, the MCHS Cheer and Stunt Squad Constitution states that "Members will be dismissed for improper social media usage."[1]

34. As a result, the five girls were dismissed from the cheer team.

35. Four of the five students were later given tasks, such as community service and presentations regarding proper social media usage, that could eventually lead to their reinstatement while S.J.'s dismissal was final. S.J. was not given any options or a path to reinstatement.

36. S.J. has maintained a good reputation at Mountain Crest High School and is consistently on the honor roll. This incident has caused great strain on her relationship both with other students and teachers.

---

[1] Exhibit A, MCHS Cheer and Stunt Squad Constitution at 4.

37. S.J. has been barred from her chief extracurricular activity on an ongoing basis as punishment for her protected self-expression, and if the cheerleading rules remain in place, S.J. will be subject to continuing censorship of her protected speech.

38. If S.J. is not allowed to participate on the Mountain Crest High School cheer team, it will likely impede her athletic development and interfere with or deny her future opportunities for success and scholarships. This will be a personal loss for S.J. because she is very passionate about cheerleading and desires to participate.

39. Defendants have a history of treating female athletes differently than male athletes. For example, during the Fall of 2016, a male football player at Mountain Crest High School was criminally charged with distributing sexual photographs and materials via text message. This is a clear violation of the school's code and Constitution. The football player's punishment was a two-game suspension. No extra tasks, punishments, or other requirements were given before he was allowed to continue playing for the team.

40. Due to the unequal punishment of male and female athletes, Plaintiff Corey Johnson filed a Title IX Complaint with Defendant Kirk McRae, the Cache County School District's Director of Human Resources.

41. In his response to Plaintiff, Defendant McRae states that cheerleaders are held to a higher standard than football players because like student government, the Cheer Team is "not under the jurisdiction of the [Utah High School Activities

Association," and because "there is a high expectation that these students actively represent MCHS."[2]

42. After S.J. was dismissed from the cheer team, Plaintiff Corey Johnson, S.J.'s father, appealed the decision to the MCHS vice principal, principal, and superintendent.

43. Defendant Denise Mouritsen and Defendant Teri Cutler unequivocally denied S.J.'s request to be reinstated to the team.

44. Defendant Steven C. Norton, the superintendent, denied S.J.'s request to be reinstated, but allowed the MCHS administration to set requirements that would allow S.J. to be reinstated to the cheer team.

45. The requirements were later approved and set by the MCHS administration on May 22, 2018, and were as follows:

   1. 50 hours of service;
   2. Apologize to Cheer Team;
   3. Prepare research based presentation on improper social media usage; and
   4. Meet with Admin/Coach/Athletic Director regarding positive plan to move forward.[3]

46. Plaintiff Corey Johnson and S.J. refused to accept punishment for S.J.'s protected speech.

---

[2] Exhibit B, Response to Title IX Complaint.
[3] Exhibit C, MCHS Contract for Readmission to Cheer Team.

## STATE ACTION

47. Mountain Crest High School and its employees are state actors because they are employees of the state and were acting under the color of the law at all times during this incident.

48. While the school and its employees have the discretion to determine punishment and ensure a safe learning environment for all students, the school is not allowed to violate a student's rights under the First Amendment, Fourteenth Amendment, and Title IX.

## CAUSE OF ACTION 1

(Free Speech - First Amendment Claim Pursuant to 42 U.S.C. § 1983 and § 1988)

49. S.J. re-alleges the above paragraphs as though fully set forth herein.

50. The actions of the Defendants entitle S.J. to relief under § 42 U.S.C. 1983 because the Defendants deprived the Plaintiff of her rights under the First Amendment to speak freely. Her words were not directed at any student, faculty member, or the school itself and did not take place either on school property or using school property. Therefore, the school has no authority to punish the Plaintiff for speaking freely outside of school.

51. By punishing S.J. for speaking freely outside of school property, the Defendants are in direct violation of her First Amendment Rights.

52. The Third Circuit has stated:

It would be an unseemly and dangerous precedent to allow the state, in the guise of school authorities, to reach into a child's home and control his/her actions there to the same extent that it can control that child when he/she

participates in school sponsored activities.[4]

53. The US Supreme Court has recognized that schools do not have the same authority to punish off-campus speech as they do on-campus speech.[5]

## CAUSE OF ACTION 2

(Equal Protection - Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983 and § 1988)

54. S.J. re-alleges the above paragraphs as though fully set forth herein.

55. The actions of the Defendant's entitle S.J. relief under § 42 U.S.C. 1983 because Defendants deprived the Plaintiff of her rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, while acting under the color of state law.

56. Defendants punish female athletes such as S.J. more harshly than male athletes for similar or worse behavior.

57. Defendants' disparate treatment of Plaintiff and other female athletes violates the Fourteenth Amendment's equal protection clause, which states that "No State shall … deny any person within its jurisdiction the equal protection of the laws."

58. The MCHS Constitution and School Policy regarding "improper social media usage" does not define any terms that would allow a student to know whether

---

[4] *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 216 (3d Cir. 2011)
[5] *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 688 (1986) (Brennan, concurring) ("If respondent had given the same speech outside of the school environment, he could not have been penalized simply because government officials considered his language to be inappropriate.").

their social media usage is actually a violation. Both the vagueness and breadth of the policy allows and possibly encourages a disparity in how the school punishes different genders and athletes pursuant to the policy.

## CAUSE OF ACTION 3

(Title IX claim pursuant to 42 U.S.C. § 1983 and § 1988)

59. S.J. re-alleges the above paragraphs as though fully set forth herein.

60. The actions of the Defendant's entitle S.J. relief under § 42 U.S.C. 1983 because Defendants deprived S.J. of her rights and protections under Title IX.

61. Title IX regulations are in place to ensure that education programs operate in a nondiscriminatory manner, including athletics and discipline. Mountain Crest High School's policies and practices allow MCHS to infringe upon S.J.'s and other students' First and Fourteenth Amendment rights as well as a violation of her rights under Title IX. S.J. received a harsher punishment for her actions while a male football player received a much lighter punishment after a criminal conviction for sending lewd text messages to other students.

62. Defendant McRae stated that one reason for the disparate treatment is that cheerleaders are more similar to the student government than to other athletes. However, he gave no justification for such a position. To the contrary, similar to other athletic teams, cheerleaders are required to try out and meet physical requirements, pay participation fees, order uniforms, attend training camps, and attend games and cheer competitions.

63. There is no justification for the School's decision to punish S.J. so harshly.

64. Defendants have a pattern of punishing female athletes more harshly than male athletes for similar behavior.

65. By implementing and enforcing policies allowing for gender-based discrimination and dismissing S.J. from the cheer team, the Defendants have discriminated against S.J. on the basis of her gender which is in direct violation of Title IX.

### IMMEDIATE AND EQUITABLE RELIEF

66. S.J. seeks immediate and equitable relief in the form of a temporary restraining order and a preliminary injunction.

67. S.J.'s request for immediate equitable relief is supported by a separate motion and included memorandum as well as Plaintiff Corey Johnson's declaration.

### DEMAND FOR JURY TRIAL

68. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, S.J. demands trial by jury in this action of all issues so triable.

### RELIEF REQUESTED

WHEREFORE, S.J. demands the following relief:

1. For declaratory judgment that the actions of the Defendants in enforcing the social media policy and punishing S.J. for speaking freely outside of school property, violates the First Amendment to the United States Constitution and 42 U.S.C. 1983;

2. For declaratory judgment that the actions of the Defendants in implementing and selectively enforcing a policy favoring male students, violates the Equal Protection Clause under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. 1983;

3. For declaratory judgment that the actions of the Defendants in punishing S.J. more severely than male counterparts violated Title IX;

4. For a Temporary Restraining Order and Preliminary Injunction prohibiting Defendants from enforcing the social media policy as it is an unconstitutional punishment of S.J.'s rights under the First Amendment.

5. Enter an order temporarily and preliminarily enjoining Defendants from denying S.J. the opportunity to participate in cheer team and to participate in any and all upcoming trainings, camps, and practices at Mountain Crest High School on the same basis and with the same benefits as the other male athletes, or otherwise interfering with her ability to do so based on her gender.

6. Enter a permanent order enjoining the Defendants from enforcing their social media policy or otherwise punishing students for protected self-expression under the First Amendment.

7. Enter a permanent order enjoining the Defendants from discriminating on the basis of gender, from continuing policies that do not allow for equitable treatment, and for S.J. and any other female athletes or students to be treated equally and on the same basis as all male athletes or students;

8. Enter an order permanently enjoining Defendants from retaliating against S.J. for lawfully opposing practices that violate the federal constitution and Title IX;

9. Award Plaintiff appropriate monetary relief in an amount to be determined by further Court action;

10. For Plaintiff's attorney's fees and court costs in pursuing this action as per 42 U.S.C. §1983 and § 1988; and,

11. For any such other and further relief as the Court deems just and proper.

DATED this 24rd day of May, 2018.

        UTAH LEGAL CLINIC
        Attorney for Plaintiff

        by____*/s/ Angela H. Elmore*_____
        Angela H Elmore, Esq.

# EXHIBIT LIST

EXHIBIT A - MCHS Cheer Constitution

EXHIBIT B - Letter from Kirk McRae, Title IX Coordinator

EXHIBIT C - MCHS Contract to Allow S.J. back on cheer team