ANGELA H. ELMORE (SBN 13693)
UTAH LEGAL CLINIC
214 East Fifth South Street
Salt Lake City, Utah
Telephone: (801) 328-9531
angela@utahlegalclinic.com

*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| **COREY JOHNSON on behalf of minor child, S.J.**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**CACHE COUNTY SCHOOL DISTRICT, TERI CUTLER,** Mountain Crest High School Principal, **DENISE MOURITSEN,** Mountain Crest High School Assistant Principal**, DOUG SNOW,** Mountain Crest High School Assistant Principal, **LORI REYNOLDS,** Mountain Crest High School Cheerleading Advisor, **KIRK MCRAE,** Title IX Compliance Coordinator, **MIKE LIECHTY,** the Cache County School District Deputy Superintendent **STEVEN C. NORTON,** Cache County School District Superintendent, **JOHN DOES I-XX,** Mountain Crest High School Faculty.<br><br>Defendant. | **AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (VIOLATION OF CIVIL RIGHTS)**<br><br>**DEMAND FOR TRIAL BY JURY**<br><br>Case No.: 1:18-cv-00057 RJS<br><br>Judge: Robert J. Shelby |

PLAINTIFF, COREY JOHNSON on behalf of minor child, S.J., by and through counsel, ANGELA ELMORE of the Utah Legal Clinic, as a cooperating attorney for the Utah Civil Rights & Liberties Foundation, Inc., a Complaint and causes of action against the above-stated Defendants.

## PRELIMINARY STATEMENT

1. This 42 U.S.C. § 1983 action seeks equitable and legal relief for the violation of the constitutional rights of the Plaintiff.

2. S.J. is being unconstitutionally punished for exercising her First Amendment rights to private speech outside of school property and is seeking general damages and attorney's fees.

3. Defendant's social media policy for cheerleaders was used in this case to punish private out-of-school speech and is unconstitutionally vague, thereby violating the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

4. S.J. wishes to be reinstated to the Mountain Crest High School Cheerleading Squad without punishment, in addition to being allowed to participate in any camps, trainings, and any and all other related activities.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court under 42 U.S.C. § 1983 and § 1988, as well as 28 U.S.C. § 1343, and arises in order to enforce provisions of the United States Constitution.

6. Declaratory relief is authorized by 28 U.S.C. § 2201 and § 2202 and Rule 57 of the Federal Rules of Civil Procedure.

7. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

8. Pursuant to 28 U.S.C. § 1391 (e), venue is proper in this court because the misconduct of Defendants occurred within and will occur within the Northern Division of the United States District Court for the District of Utah and all individual Defendants reside within the Northern Division of the United States District Court for the District of Utah.

## PARTIES

9. Plaintiff **COREY JOHNSON, on behalf of minor child S.J.,** is a resident of Cache County. S.J. resides within the Northern Division of this Court. S.J. is currently a student at Mountain Crest High School and is seeking to be reinstated to the school's cheerleading squad without punishment for her exercise of free speech for private speech made off campus.

10. Defendant **CACHE COUNTY SCHOOL DISTRICT** is a public school district located in Cache County, State of Utah. Their administrative offices are located at 2063 N. 1200 E., North Logan, UT 84341. They are authorized by Utah Law to operate and control, *inter alia,* Mountain Crest High School.

11.  Defendant **TERI CUTLER** is the Principal of Mountain Crest High, and is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times is a person relevant to this Complaint.

12.  Defendant **DENISE MOURITSEN** is an Assistant Principal of Mountain Crest High School, and is a person within the meaning of 42 U.S.C. § 1983 and was acting under color of state law at all times is a person relevant to this Complaint.

13.  Defendant **DOUG SNOW** is an Assistant Principal at Mountain Crest High School, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

14.  Defendant **LORI REYNOLDS**, is the Cheerleading Advisor at Mountain Crest High School, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

15.  Defendant **KIRK MCRAE** is the Cache County School District Human Resources Director and Title IX Compliance Coordinator, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

16.  Defendant **MIKE LIECHTY** is the Cache County School District Deputy Superintendent, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

17. Defendant **STEVEN C. NORTON** is the Cache County School District Superintendent, and is a person within the meaning of 42 U.S.C. § 1983, and was acting under color of state law at all times relevant to this Complaint.

18. Defendants **JOHN DOE I-XX**, are as yet unidentified members that are employed by the Mountain Crest High School. They were, at all times pertinent to this action involved with enforcement of the Resolution and Policy. Defendants DOES I-XX are sued individually and in their official capacity. The full, true and correct names of these defendants are unknown to Plaintiff at this time. When Plaintiff discovers the full, true and correct names of these defendants, she shall seek leave to amend this Complaint.

19. At all times pertinent to this action, the individual Defendants were each acting under color of state law, with powers vested in them by the State of Utah.

## FACTS

20. S.J. is a student at Mountain Crest High School and resides in Cache County, Utah. S.J. is an honor roll student and a dedicated athlete.

21. S.J. has been cheerleading since 8th grade and so she tried out during the 2017-2018 academic year and was accepted to the team.

22. Leading up to try outs for the 2018-2019 academic year all participants were given all paperwork to review, sign, and return. During that meeting, social media was discussed. There were no specific restrictions on social media mentioned, just a reminder to students to be careful and thoughtful when posting to social media.

The paperwork to be returned included the Cheer and Stunt Squad Constitution, which all students and parents were required to sign.

23. The constitution was returned, signed by S.J., prior to the SnapChat post discussed below. Specifically, there is a provision in the Constitution that states "[m]embers will be dismissed for improper social media usage."[1]

24. During the try outs for the 2018-2019 academic year, while discussing social media, the cheer coach expressed to the students that they would be representing the school and that they should be careful about what they posted to social media. They did not mention any specific restrictions, just to be careful about what was posted. There was some reference to the superintendent cracking down on social media because of sexting issues in other schools in the district, but no specific examples outside of that.

25. On March 15, 2018, once tryouts were completed, the students were asked to return to the school for the results. All participants were given an envelope with a letter inside and the girls were instructed to return that evening at 7:00 p.m. if they made the team. The girls were instructed to open the letter off campus, which request S.J. complied with.

26. S.J. was delighted to learn she had made the team and, as requested, returned to the school that evening. The school had an ice cream gathering to

---

[1] Exhibit A, MCHS Cheer and Stunt Squad Constitution at 4.

celebrate the girls making the team. The girls were reminded to be nice and not to make others feel bad that they did not make the team.

27. Later that same evening, S.J. and four of her teammates and friends decided to go to Costa Vida to celebrate. While they were driving to the restaurant, they were in a private vehicle on public roads, and were not participating in any school activities and were not on school property. While in the car, one girl connected her phone to the car stereo and played a popular song titled "I.D.F.W.U." by artist Big Sean and the five girls began to sing along.

28. S.J. then took out her cell phone and took an eight-second video on her SnapChat[2] application of her and her friends singing the following lyrics from the song: "I don't fuck with you, you little stupid ass bitch, I ain't fucking with you." The lyrics were not directed at any particular person, school student, or administrator. S.J. intended to just save the video to her application, but accidentally hit a button next to the save button and added the video to her private SnapChat story. By adding this video to her story, S.J. and approximately 30 of her contacts were able to watch the video. S.J. realized her mistake approximately thirty minutes later and deleted the video from her private SnapChat story.

---

[2] Snapchat is an application for smartphones that allows users to share images that are only available for a short time. The short-lived and self-deleting nature of Snaps makes Snapchat different from other social media platforms such as Facebook and Twitter, where posts do not have a built-in expiration date. *See generally Snapchat,* Wikipedia, https://en.wikipedia.org/wiki/Snapchat (last accessed June 7, 2018).

29. That following Monday, March 19, 2018, S.J. and the four other girls in the video and their parents were asked to meet with the Principal, Assistant Principal, Athletic Director and Cheer Coach. The parents were not allowed to speak to the parents of the other girls and each meeting was separate for each family. At the respective meetings, the administrators presented the lyrics sung by the five girls in the video to the parents in writing. The administrators stated that this SnapChat video violated the Constitution's social media policy. All five girls were told that they were being dismissed from the team at that time.

30. Later that night, the parents of all the girls, except S.J., were contacted and told that their daughters would be allowed back on the team if they agreed to a number of conditions, including an apology, 50 hours community service and a statement on appropriate social media use. S.J. was not given that opportunity at that time.

31. Shortly thereafter the principal called all members of the team, and their respective parents, to a meeting. At that meeting the principal explained that a post had been made on social media of the five girls singing a song with profanity, specifically the "f-word," and that's what they were responding to. She reiterated responsible social media usage at that time.

32. At that same meeting, the four girls were given contracts with their respective punishment conditions and required to sign then, or they would need to try

out the following year. The girls complied and then were forced to read an apology letter in front of the remaining team and their families.

33. S.J. has maintained a good reputation at Mountain Crest High School and is consistently on the honor roll. This incident has caused great strain on her relationship both with other students and teachers.

34. After S.J. was dismissed from the cheer team, Plaintiff Corey Johnson, S.J.'s father, appealed the decision to the MCHS vice principal, principal, and superintendent. Defendant Denise Mouritzen and Defendant Teri Cutler unequivocally denied S.J.'s request to be reinstated to the team. Defendant Steven C. Norton, the superintendent, denied S.J.'s request to be reinstated, but allowed the MCHS administration to set requirements that would allow S.J. to be reinstated to the cheer team. The conditions later presented to Plaintiff by the MCHS administration were:

1. 50 hours of service;
2. Apologize to Cheer Team;
3. Prepare research based presentation on improper social media usage; and
4. Meet with Admin/Coach/Athletic Director regarding positive plan to move forward.[3]

35. Plaintiff Corey Johnson and S.J. asked if the terms were negotiable but were told this was the only option for S.J. to return to the team. S.J., through her father, declined the punishment.

---

[3] Exhibit B, MCHS Contract for Readmission to Cheer Team.

36. S.J. has been barred from her chief extracurricular activity on an ongoing basis as punishment for her protected self-expression, and if the cheerleading rules remain in place, S.J. will be subject to continuing censorship of her protected speech.

37. If S.J. is not allowed to participate on the Mountain Crest High School cheer team, it will likely impede her athletic development and interfere with or deny her future opportunities for success and scholarships. This will be a personal loss for S.J. because she is very passionate about cheerleading and desires to participate.

38. Plaintiff Corey Johnson and S.J. refused to accept punishment for S.J.'s protected speech as they felt S.J., and the other girls, had already been punished too much.

## STATE ACTION

39. Mountain Crest High School and its employees are state actors because they are employees of the state and were acting under the color of the law at all times during this incident.

40. While the school and its employees have the discretion to determine punishment and ensure a safe learning environment for all students, the school is not allowed to violate a student's rights under the First Amendment.

## CAUSE OF ACTION 1

(First Amendment Claim Pursuant to 42 U.S.C. § 1983 and § 1988 - Free Speech)

41. S.J. re-alleges the above paragraphs as though fully set forth herein.

42. The actions of the Defendants entitle S.J. to relief under § 42 U.S.C. 1983 because the Defendants deprived the Plaintiff of her rights under the First Amendment to speak freely. Her words were not directed at any student, faculty member, or the school itself and did not take place either on school property or using school property. Therefore, the school has no authority to punish the Plaintiff for speaking freely outside of school.

43. By punishing S.J. for speaking freely outside of school property, the Defendants are in direct violation of her First Amendment Rights.

44. The Third Circuit has stated:

It would be an unseemly and dangerous precedent to allow the state, in the guise of school authorities, to reach into a child's home and control his/her actions there to the same extent that it can control that child when he/she participates in school sponsored activities.[4]

45. The US Supreme Court has recognized that schools do not have the same authority to punish off-campus speech as they do on-campus speech.[5]

## CAUSE OF ACTION 2

(Fourteenth Amendment 42 U.S.C. § 1983 and § 1988 - Due Process)

46. S.J. re-alleges the above paragraphs as though fully set forth herein.

47. The actions of the Defendant's entitle S.J. relief under § 42 U.S.C. 1983 because Defendants deprived the Plaintiff of her rights under the Due Process Clause of the

---

[4] *Layshock ex rel. Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 216 (3d Cir. 2011)
[5] *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 688 (1986) (Brennan, concurring) ("If respondent had given the same speech outside of the school environment, he could not have been penalized simply because government officials considered his language to be inappropriate.").

Fourteenth Amendment of the United States Constitution, while acting under the color of state law.

48. The Defendant's social media policy within the Cheer and Stunt Squad Constitution, implemented by the school administrators, while acting under color of state law, is unconstitutional on its face because it is unduly vague , in violation of the First Amendment, and applied to the State through the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

49. Specifically, the Constitution states that "members will be dismissed for improper social media usage." Within the Constitution it does not define any terms that would allow a student to know whether their social media usage is actually a violation. Both the vagueness and breadth of the policy allows, and possibly encourages, the school administration to sensor out-of-school speech and the viewpoint or content of that speech.

## IMMEDIATE AND EQUITABLE RELIEF

50. S.J. seeks immediate and equitable relief in the form of a temporary restraining order and a preliminary injunction.

51. S.J.'s request for immediate equitable relief is supported by a separate motion and included memorandum as well as supporting declarations.

## DEMAND FOR JURY TRIAL

52. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, S.J. demands trial by jury in this action of all issues so triable.

## RELIEF REQUESTED

WHEREFORE, S.J. demands the following relief:

1. For declaratory judgment that the actions of the Defendants in enforcing the social media policy and punishing S.J. for speaking freely outside of school property, violates the First Amendment to the United States Constitution and 42 U.S.C. 1983;

2. For declaratory judgment that the District's Cheer and Stunt Squad Constitution that has been used, and may be used, to punish out-of-school speech are unconstitutionally vague, and thereby violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. 1983;

3. For a Temporary Restraining Order and Preliminary Injunction prohibiting Defendants from enforcing the social media policy as it is an unconstitutional punishment of S.J.'s rights under the First Amendment, which includes reinstating S.J. to the team without punishment for her speech;

4. Enter an order temporarily and preliminarily enjoining the District from enforcing the social media policy within the Cheer and Stunt Squad Constitution as it is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. 1983;

5. Enter a permanent order enjoining the Defendants from enforcing their social media policy or otherwise punishing students for protected self-expression under the First Amendment.

6. Enter a permanent order enjoining the Defendants from enforcing the vague current social media provision as it violated the Fourteenth Amendment;

7. Award Plaintiff appropriate monetary relief in an amount to be determined by further Court action;

8. For Plaintiff's attorney's fees and court costs in pursuing this action as per 42 U.S.C. §1983 and § 1988; and,

9. For any such other and further relief as the Court deems just and proper.

DATED this 8th day of June, 2018.

                                        UTAH LEGAL CLINIC
                                        Attorney for Plaintiff

                                        by_____*/s/ Angela H. Elmore*_____
                                        Angela H Elmore, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing AMENDED COMPLAINT was e-filed with the Court this 8th day of June 2018 via the Court's CM/ECF software which is relied upon to promptly notify e-filer counsel of this filing and was also emailed, with Plaintiff obtaining prior consent for service on all defendants through their counsel, to the following:

KYLE J. KAISER (13924)
DARIN B. GOFF (11355)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856 Telephone
kkaiser@agutah.gov
dgoff@agutah.gov
Attorneys for Defendants

                                                           /s/*Angela H. Elmore*
                                                          Utah Legal Clinic

EXHIBIT LIST

EXHIBIT A - MCHS Cheer Constitution
EXHIBIT B - MCHS Contract to Allow S.J. back on cheer team
EXHIBIT C - Declaration of S.J.
EXHIBIT D - Declaration of Corey Johnson
EXHIBIT E - Declaration Shauna Wiberg
EXHIBIT F - Declarations for E.W.