ANGELA H. ELMORE (SBN 13693)
UTAH LEGAL CLINIC
214 East Fifth South Street
Salt Lake City, Utah
Telephone: (801) 328-9531
angela@utahlegalclinic.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION**

| | |
|---|---|
| **COREY JOHNSON on behalf of minor child, S.J.**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**CACHE COUNTY SCHOOL DISTRICT, et al**.<br><br>Defendant. | **PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Case No.: 1:18-cv-00057-DAK<br><br>Judge: Dale A. Kimball |

ANGELA H. ELMORE (SBN 13693)
UTAH LEGAL CLINIC
214 East Fifth South Street
Salt Lake City, Utah
Telephone: (801) 328-9531
angela@utahlegalclinic.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
NORTHERN DIVISION**

| | |
|---|---|
| **COREY JOHNSON on behalf of minor child, S.J.**, an individual,<br><br>           Plaintiff,<br><br>vs.<br><br>**CACHE COUNTY SCHOOL DISTRICT, et al**.<br><br>           Defendant. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S REPLY**<br><br>Case No.: 1:18-cv-00057-DAK<br><br>Judge: Dale A. Kimball |

# **TABLE OF CONTENTS**

STATEMENT OF ADDITIONAL FACTS ........................................................................... 1

LEGAL STANDARD ........................................................................................................... 2

LEGAL ANALYSIS .............................................................................................................. 4

    I. Irreparable Harm ..................................................................................................... 4

    II. Substantial Likelihood of success ........................................................................... 6
        A. Extra-Curricular Activities ................................................................................ 6
        B. Announcement ................................................................................................... 6
        C. Social Media ...................................................................................................... 6
        D. Insubordination ................................................................................................. 7

RELIEF REQUESTED ........................................................................................................ 10

# **TABLE OF AUTHORITIES**

Other Authorities

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ................................................................................................ 4
*B.L. by Levy v. Mahoney Area School District*,
   289 F.Supp.3d. 607 (M.D. Pa. 2017) ....................................................................................... 9
*Bray v. QFA Royalties LLC*,
   486 F.Supp.2d 1237 (D. Colo. 2007) ....................................................................................... 3
*Elrod v. Burns*,
   427 U.S. 347 (1976) ................................................................................................................. 4
*Hadley v. Rush Henrietta Central School Dist.*,
   409 F.Supp.2d 164 (W.D. NY 2006) ....................................................................................... 5
*Heideman v. S. Salt Lake City*,
   348 F.3d 1182 (10th Cir. 2001) ................................................................................................ 4
*J.C. ex rel. R.C. v. Beverly Hills Unified School District*,
   711 F.Supp.2d 1094 (E.D. Cal. 2010) ...................................................................................... 8
*Kikumura v. Hadley*,
   242 F.3d 950, 963 (10th Cir. 2001) .......................................................................................... 5
*Layshock ex rel. Layshock* v. *Hermitage Sch. Dist.*,
   650 F.3d 205 (3d Cir. 2011) ..................................................................................................... 9
*Lowery v. Euverard*,
   497 F.3d 584 (6th Cir.2007) ................................................................................................... 10
*O Centro Espirita Beneficientes Uniao Do Vegetal v. Ashcroft*,
   389 F.3d 973, 975 (10th Cir. 2004) ...................................................................................... 2, 3
*Packingham v. North Carolina*,
   137 S.Ct. 1730 (2017) .............................................................................................................. 5
*Schrier v. Univ. of Colo.*,
   427 F.3d 1253 (10th Cir. 2005) ............................................................................................ 2, 3
*Taylor v. Roswell Independent School Dist.*,
   713 F.3d 25 (10th Cir. 2013) .................................................................................................... 8
*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969) ............................................................................................................. 6, 8
*Verlo v. Martinez*,
   820 F.3d 1113 (10th Cir. 2016) ................................................................................................ 4

\* \* \*

## STATEMENT OF ADDITIONAL FACTS[1]

On March 15, 2018, the students that made the cheer team at Mountain Crest High School were instructed to return that evening at 7:00 p.m. to an ice cream gathering to celebrate. Exhibit BBB (i) and BBB (iv). Plaintiff S.J., her friend E.W. and friend S.E.J. all attended this meeting and were never instructed not to post an announcement to social media, but do recall a vague instruction to "be nice." *Id*.

Later that same evening, S.J. and four of her teammates decided to go out to dinner to celebrate at Costa Vida. While at Costa Vida, there were many other cheerleaders there celebrating, wearing their cheer shirts, and taking videos of themselves. *Id*. Many other posts were shared, but S.E.J. was only able to save one of the Snaps. See Exhibit CCC (Snap of Mountain Crest Cheerleaders at Costa Vida).

That following Monday, March 19, 2018, S.J., E.W., S.E.J. and their parents were asked to meet with the principal, assistant principal, athletic director and cheer coach. Corey Johnson, S.J.'s father, Shauna Wiberg, E.W.'s mother, and Shani Jensen, S.E.J.'s mother attended those meetings with their children and recall the administrators presenting the lyrics sung by the five girls in the video to them in writing. Exhibit BBB (ii), Exhibit BBB (iii), Exhibit DDD. The administrators stated that this SnapChat video violated the Constitution's social media policy, but specifically said that the discipline was because of the profane language used. No other explanation was given, including that it was due to a premature announcement.

---

[1] In addition to declarations, live testimony will be presented to lay foundation for exhibits and additional facts not already in the declarations filed in Petitioner's Motion for TRO.

1

Shortly thereafter the principal called all members of the team except S.J., and their parents, to a meeting. At that meeting the principal explained that a post had been made on social media of the five girls singing a song with profanity, specifically the "f-word," and that was what they were responding to. Exhibit BBB (iii) and DDD. She then reiterated responsible social media usage. Shani Jensen was in attendance at this meeting and her husband, Terry Jensen, recorded the meeting. Exhibit EEE (Recording of Mtg.)

## **LEGAL STANDARD**

The District heavily relies on *Schrier v. Univ. of Colo.*, 427 F.3d 1253 (10th Cir. 2005) to support the argument that S.J. must meet a higher standard for a Preliminary Injunction because the injunction would be a mandatory one. Def. Opp. To TRO (doc. #41), at 10. Plaintiff still maintains that this is not a mandatory injunction, as the request is limited to withholding punishment of S.J. during the pendency of this case, which would not require the Court's supervision to enforce the injunction.

If mandatory, the District properly cites that "disfavored injunctions 'must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the moral course.'" Def. Opp. to TRO, at 10 (quoting *O Centro Espirita Beneficientes Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004)).

The District failed to explain that the Court in *Schrier* specifically held that the *en banc* ruling, requiring that the factors weigh "heavily and compellingly" in favor of the injunction, was abandoned by the 10th Circuit. 427 F.3d at 1261. Instead, the Court simply recognized that a mandatory injunction, restoring the status quo, needed to be "more closely scrutinized" and did not apply the same heightened standard for cases altering the status quo. *Id*.

2

The district court in Colorado, in *Bray v. QFA Royalties LLC*, engaged in a meaningful analysis of just such a type of injunction and the relevant Tenth Circuit cases that guided their decision. 486 F.Supp.2d 1237, 1243-1246 (D. Colo. 2007). Specifically, the district court reviewed the full decisions, including *en banc* decisions, in *Schrier* and *O Centro*, which discussed in more detail what Courts should consider to closely scrutinize the injunction. *Id*. The *Bray* court summarized these 10th Circuit decisions in holding that "the decision of whether to grant or deny a request for a preliminary injunction involves a calculation, undertaken with care and as much information as can be confidently amassed under the time constraints that exist in a given situation, of how best to preserve the availability of meaningful relief without visiting greater harm on the entity being restrained if the calculation is wrong. It is an educated wager, of sorts, guided by a balancing and grading of relative harm." *Id*. at 1244-45.

Similar to *Bray*, in this case the relative harms weigh in favor of the injunction. To weigh the relative harm, we must first identify it. The District has already agreed to allow S.J. to remain on the cheer team. The only remaining issue is punishment. In *Schrier*, the university had already replaced the professor at issue in the case, so granting the injunction would have displaced the Chair of the Department of Medicine. *Id*. at 1246. Also, the medical school would continue to be governed by a chairman that was suing the school during the case. *Id*. On the other hand, if the professor were not reinstated, he would lose any benefit from the chair position during that time. *Id*. As the *Bray* court points out, if *Schrier* was ultimately successful in his claims, he could be reinstated to his position and any loss of benefit during the case could be compensated to him monetarily. *Id*.

That is not the case for S.J. If S.J. is forced to wait until the completion of this case, she will likely miss cheerleading for the remainder of the school year, if not longer. Unlike a medical chair position in a lifelong profession, high school cheerleading is limited to one's time in high school. On the other hand, the risk to the District is minimal. If the District is successful in the case, they will simply require S.J. to comply with her reinstatement terms later, compliance of which would take her a very short period of time. S.J. has already received significant punishment for the time she has been removed from the team, including missing cheer camp and the majority of summer practices.

## LEGAL ANALYSIS

### I. Irreparable Harm

First, the District disputes the presumption for irreparable harm when a constitutional right has been violated. The District cites *Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2001) to support their argument against the presumption. Def. Obj. to TRO, at 12-15. In *Heideman*, the Court considered whether the requirement for exotic dancers to wear pasties infringed on their First Amendment Rights of free speech and expression. *Id*. Ultimately, the Court held that the restriction did not impact the speaker's message and, therefore, the requirement was not a violation of the plaintiff's free speech. *Id*.

Plaintiff maintains that the loss of a First Amendment right, even for a limited period of time, establishes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016); *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). *Heideman* is a case involving nudity, which is not in and of itself constitutionally protected speech. 348 F.3d at 1190. Therefore, the restrictions on such nudity do not impact an established

4

constitutional right.

This case is one where S.J. used SnapChat, an application that is at least text and video messaging and at most social media. As the United States Supreme Court recently recognized, use of social media is constitutionally protected speech pursuant to the First Amendment. *See Packingham v. North Carolina*, 137 S.Ct. 1730 (2017). The Court need not determine the success of the claim for this prong, instead, as in *Verlo*, an established right is being infringed upon and therefore irreparable harm weighs in favor of S.J.

Second, the District disputes S.J.'s ability to establish irreparable harm outside of the clear presumption described above. The 10th Circuit has also held that a "plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Kikumura v. Hadley*, 242 F.3d 950, 963 (10th Cir. 2001). It is very difficult to ascertain damages for the continued removal of S.J. from the cheer team. As previously discussed, cheerleading in high school is limited to a few years and cannot be replaced with any other sport. It is uncertain when this case will close, but it is unreasonable to expect it will occur before the school year begins. S.J. is expected to miss important games, opening school year performances, school dance performances and national tryouts. This harm is not theoretical. S.J. was a cheerleader last year and is aware of the standard activities she would be performing. She will miss these opportunities, which are very difficult to assign a cost, if she is not allowed to be reinstated to the team.

In a similar case, *Hadley v. Rush Henrietta Central School Dist.*, 409 F.Supp.2d 164, 167-68 (W.D. NY 2006) the court found that the limited nature of high school sports, meaning

5

*Hadley* would never have the same opportunity again, was sufficient to show irreparable harm. Like *Hadley*, S.J. will never again have this opportunity to participate in high school cheer.

## II. Substantial Likelihood of success

### A. *Extra-Curricular Activities*

The issue raised by the District of the right to engage in extra-curricular activities, for purposes of the First Amendment, is a diversion and not critical to the case at hand. The reality is, if students engage in extra-curricular activities, their involvement in school activities is greater than other classmates. Cases cited by the District are either irrelevant (specific only to 4th Amendment Violations) or consistent with the already established "disruption" analysis provided by *Tinker*.

### B. *Announcement*

Assuming the Defendants' facts to be true, that they instructed S.J. not to post an announcement to social media until the assembly the following day, *See* Def. Obj. to TRO, Exhibit Q, Declaration of Lori Reynolds, at 5., the Snap at issue is not an announcement. Five girls were spending time together on their way to a restaurant. A very popular song came on the radio and S.J. took a video of the five girls singing the chorus to the song. The cheer team was given their cheer shirts and never instructed to not wear them. In fact, many other cheerleaders were seen at Costa Vida wearing their cheer shirts and all cheerleaders wore their shirts to school the following day before the assembly.

### C. *Social Media*

Unlike Facebook, SnapChat is very private and limited in content. Many Facebook accounts, unbeknownst to the user, are public. Like many new advances in technology, SnapChat

6

allows friends to talk, similar to Skype. The Snaps are meant to be temporary and spontaneous and are messages to friends, not the public. Friends text videos, images and messages on group texts, skype, and use other video chat applications, but there is no clear line for when the message becomes social media. In this case, S.J. was recording her and her friends singing a song, which ended up being sent to a number of her close friends with SnapChat. When Facebook users often have hundreds of friends, sending a video to 30 people via SnapChat is no different than other non-social media methods.

### D. *Insubordination*

The District has never justified their actions of removing S.J., or the other four cheerleaders, because of insubordination until this Court action. The District met with parents individually and then in a group with the rest of the team and each time reiterated that the action was because of the profanity in the Snap. When specifically asked by Shani Jensen what exactly the girls had done wrong, the administration described five girls that had recorded themselves singing a song with profanity and posting it online. Never was it mentioned that this was perceived as bullying, threatening or insubordinate behavior.

Several of the cheerleaders have executed declarations, and will testify at the evidentiary hearing in this case, that the administration never instructed them not to announce their placement on the team on social media. Other cheerleaders at Costa Vida were similarly using SnapChat to record videos with their friends and were also wearing their cheer shirts. If the administration had discussed the prohibition on announcing the girls making the team, it was in broad terms of being nice or, alternatively, the instruction was not given to all 25 girls.

Corey Johnson, Shani Jensen, Shauna Wiberg and their respective daughters were all

told that the discipline was for profanity and were given no other explanation. All three were also provided a printout of the lyrics to I.D.F.W.U., the song the girls sang, which is also consistent with the explanation given at the time, that the girls were disciplined for profane language. The new explanation for discipline by the District is a convenient after-the-fact attempt to absolve themselves from liability and is not supported by the objective evidence in this case. Throughout all of Mr. Johnson's appeals, he continually discussed the profanity, as he was told that was the basis for the discipline. The District made no attempt to correct Mr. Johnson. Further, the terms of reinstatement for S.J. were not focused on anti-bullying or insubordination. They were focused on appropriate social media usage, which is also consistent with Plaintiff's presentation of facts.

     Finally, even assuming the facts in favor of defendants, the actions of S.J. do not rise to the level of insubordination necessary to reasonably forecast or cause a material and substantial disruption necessary under *Tinker*. For the school's forecast to be reasonable, it should be based on a concrete threat of substantial disruption. *See Taylor v. Rosewell Independent School Dist.*, 713 F.3d 25, 37 (10th Cir. 2013). S.J. posted a Snap singing a song with friends. Just because Ms. Reynolds subjectively perceived this as a threat to her authority, and the act was therefore insubordinate, there still must a concrete threat of disruption and that disruption must be substantial. *Id.*

     The fact that one or two girls may have seen the video as a celebration and had hurt feelings, which was only vaguely referenced in Defendants' Declarations, is not a substantial disruption. If it were, the Court in *J.C. ex rel. R.C. v. Beverly Hills Unified School District*, 711 F.Supp.2d 1094 (E.D. Cal. 2010) would have held differently. In that case the disruption

8

included students missing classes and a young girl that was humiliated. *Id*. Any reference to reputation or rivalry is similarly not substantial. The Snap was not vulgar or offensive and certainly did not fuel the "sometimes violent fires of the rivalry." Def. Obj. to TRO, at 20. Certainly, a distinction can be made between a confederate flag and recording oneself sing a Big Sean song, or at least one hopes the District can draw one.

     As for reputation, the song was made privately, with a private account, off school property. Further, it did not have any particular message of hate, and did not bully or harass anyone. The impact on the reputation of the cheer squad is minimal at best.

     The District has made similar arguments in this case as the State did in *B.L. by Levy v. Mahoney Area School District*, 289 F.Supp.3d. 607, 613 (M.D. Pa. 2017), but the Third Circuit did not find them compelling. In that case, a high school student posted a Snap, which was a picture of herself holding her middle finger up (flipping off the camera) with text below that read "fuck school fuck softball fuck cheer fuck everything." *Id*. at 610. Initially B.L. was told that she was being disciplined for "disrespecting the school," but later was told it was for use of profanity. *Id*. 610-613

     Ultimately, the Court was not persuaded by the school district's arguments and found that if we followed the district's logic it would result in students being "barred from an extracurricular activity if they were at home with friends and uttered a profanity that was subsequently reported to the school . . . interpreting this Circuit's jurisprudence to allow school children to serve as Thought Police—reporting every profanity uttered—for the District. Such construction is 'unseemly and dangerous.'" *Id*. at 613 (quoting *Layshock ex rel. Layshock v. Hermitage School Dist.*, 650 F.3d 205, 216 (3rd Cir. 2011)).

9

Ms. Reynolds found the Snap in this case to be either disrespectful or profane, neither of which are sufficient to infringe on S.J.'s First Amendment rights. Not surprisingly, the District relies heavily on *Lowery v. Euverard*, 497 F.3d 584 (6th Cir.2007). In that case, a football player started a petition to remove his coach from his position. *Id*. In *Lowery*, the Court found that the petition amounted to a threat against the coach as it was an attempt to have him fired, as well as required the team to choose between the student and the coach, which was expected to cause a disruption. *Id*. at 591-594.

Even if instructed not to announce on social media, S.J. followed that instruction. And even if perceived as an announcement, the District found this request not to post to social media so important that they claim to have announced it at an ice cream social where the girls were excitedly chatting and celebrating the news of making the team and collecting their shirts. The school was sending 25 cheerleaders out into the world with their cheer shirts on. It is unclear why the District thought that others would be sheltered from the announcement, and especially in such a small community. Wearing of the shirt, which was not condemned, was an announcement and more public than S.J.'s Snap. It is unreasonable to anticipate that the Snap would have caused any disruption, let alone a substantial one.

## **RELIEF REQUESTED**

All four factors for granting a preliminary injunction weigh in Plaintiff.S.J.'s favor. For all the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiffs motion.

Dated: June 25, 2018

UTAH LEGAL CLINIC
Attorney for Plaintiff
by____*/s/ Angela H. Elmore*_____
Angela H Elmore, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing PLAINTIFF'S REPLY TO DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION was e-filed with the Court this 25th day of June 2018 via the Court's CM/ECF software which is relied upon to promptly notify e-filer counsel of this filing and was also emailed to the following:

KYLE J. KAISER (13924)
DARIN B. GOFF (11355)
Assistant Utah Attorney General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856 Telephone
kkaiser@agutah.gov
dgoff@agutah.gov
Attorneys for Defendants


   /s/*Angela H. Elmore*
_____
Utah Legal Clinic

**EXHIBIT LIST**
**(Continued Numbering from Plaintiff's Motion for TRO)**

CCC – Snap of Mountain Crest Cheerleaders at Costa Vida
DDD – Declaration for Shani Jensen
EEE – Recording of Meeting with Cheer Team and their Parents Discussing Discipline

13